**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **HANCOCK BANK** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 14-1300** |
| **MELVIN CHRIS OLLER, et al.** | **SECTION: "G" (5)** |

## ORDER

Before the Court are Defendant Nicole R. Dillon's ("Dillon"), in her capacity as Administratrix of the Succession of Melvin Chris Oller ("Oller"), "Motion for New Trial, Motion to Set Aside Default Judgment Pursuant to Rule 55(c) and/or Rule 60,"[1] and Plaintiff Hancock Bank's ("Hancock") "Motion to Strike Answer of Nicole R. Dillon, Administratrix of the Successfion of Melvin Chris Oller."[2] Having considered the motions, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant Dillon's motion to set aside the entry of default against her and deny Hancock's motion to strike Dillon's answer.

## I. Background

One June 4, 2014, Plaintiff filed suit against Oller to recover amounts due under a guarantee agreement executed in favor of Plaintiff.[3] Oller passed away on August 25, 2014.[4] On October 21, 2014, this Court granted Plaintiff's Motion to Substitute the heirs of Oller as part-defendants in the instant case.[5] In January 2015, Plaintiff filed a Petition by Creditor for Appointment of

---

[1] Rec. Doc. 34.

[2] Rec. Doc. 33.

[3] Rec. Doc. 1.

[4] Rec. Doc. 9 at 2.

[5] Rec. Doc. 10.

Administrator of Succession, to open a succession so that Oller's assets could be properly administered in the 21st Judicial District Court, Parish of Tangipahoa.[6] On March 16, 2015, this Court granted Plaintiff's Motion to Substitute Dillon, the administratrix of the succession, as the legal representative of Oller.[7]  Summons was served on Dillon and returned executed on March 26, 2015.[8] On April 28, 2015, Plaintiff filed a motion for entry of default based on Dillon's failure to answer or otherwise plead in this litigation.[9] The Clerk of the Court granted Plaintiff's request, and a default was entered on April 30, 2015.[10] On June 8, 2015, the Court held a scheduling conference by telephone, in which Dillon participated.[11]

On December 29, 2015, Plaintiff filed an "Ex Parte Consent Motion for Extension of All Deadlines and a Continuance of Trial Date."[12] On January 7, 2016, the Court conducted a status conference with the parties to discuss the issues raised in this motion. Finding that the parties had failed to establish good cause for a continuance, the Court denied the motion to continue the trial date on January 8, 2016, but extended the deadlines for pretrial motions.[13]

On January 12, 2016, Hancock filed a motion for default judgment.[14] The following day, on

---

[6] Rec. Doc. 26 at 2.

[7] Rec. Doc. 19.

[8] Rec. Doc. 21.

[9] Rec. Doc. 22.

[10] Rec. Doc. 23.

[11] Rec. Doc. 25.

[12] Rec. Doc. 26.

[13] Rec. Doc. 28.

[14] Rec. Doc. 29.

January 13, 2016, Dillon filed an answer without first requesting leave of Court.[15] Also on January 13, 2016, Hancock filed a motion for summary judgment.[16] On January 19, 2016, Hancock filed a motion to strike Dillon's answer,[17] and Dillon filed a motion to set aside the entry of default against her.[18] On January 20, 2016, the Court expedited hearings on both motions,[19] and Hancock and Dillon each filed memoranda in opposition on January 22, 2016.[20]

## II. Parties' Arguments

### A.    *Dillon's Arguments in Support of Motion to Set Aside Entry of Default*

In her motion, Dillon states that the Court can set aside an entry of default for good cause, which requires considering three factors: (1) whether the default was willful; (2) whether the plaintiff would be prejudiced; and (3) whether the defense is meritorious.[21] Dillon argues that her default was not willful because she was not properly served by Hancock.[22] Dillon claims that Hancock filed a proof of service alleging that Dillon had been served through Tasha Bilodeau, her secretary, on March 25, 2015.[23] However, Dillon claims, she could not be properly served through Bilodeau because Louisiana Code of Civil Procedure article 1235(B), which does authorize service

---

[15] Rec. Doc. 30.

[16] Rec. Doc. 31.

[17] Rec. Doc. 33.

[18] Rec. Doc. 34.

[19] Rec. Docs. 35, 36.

[20] Rec. Docs. 37, 38.

[21] Rec. Doc. 34-1 at p. 2 (citing *Matter of Dierschke*, 975 F.2d 181 (5th Cir. 1982)).

[22] *Id.*

[23] *Id.* at p.1.

on an attorney as a representative of a client through the attorney's secretary, does not apply here, where Dillon was appointed as administratrix of the succession.[24] According to Dillon, service would need to be made upon her personally under Louisiana state law in order to constitute proper service.[25]

Furthermore, Dillon argues, Hancock would not be prejudiced by setting aside the entry of default.[26] Dillon claims that Hancock and the Oller estate have been working to resolve the matter for some time, and that she has made appearances in the case, including attending status conferences, conducting discovery, and undertaking other matters related to preparing the matter for trial.[27] Thus, Dillon contends, good cause exists for the Court to set aside the entry of default.[28]

## B.    *Hancock's Arguments in Opposition to Setting Aside Entry of Default*

In opposition, Hancock claims that it originally moved for an entry of default after making several attempts to contact Dillon, as representative of Oller's estate, to no avail.[29] Hancock alleges that Dillon was aware of the entry of default and requested that Hancock's counsel wait until she could contact the heirs of the deceased before moving for an entry of a default judgment.[30] Hancock avers that it waited for nearly 10 months, but after it was clear that Dillon was not going to take

---

[24] *Id.* at p. 3.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at p. 4.

[29] Rec. Doc. 37 at p. 1.

[30] *Id.* at p. 2.

action, it moved for default judgment.[31] According to Hancock, Dillon has only now argued for the first time that she was improperly served and has therefore presented "good cause" to vacate the Clerk's entry of default.[32] Hancock argues, however, that Dillon's failure to file a responsive pleading was not only negligent, but willful.[33]

According to Hancock, Dillon's argument that service on her secretary was insufficient is without merit because Louisiana Code of Civil Procedure article 1235(B) allows service of process on an attorney's secretary where an attorney is appointed to represent the succession of a deceased defendant.[34] Hancock contends that Dillon was substituted as a defendant pursuant to Federal Rule of Civil Procedure 25(a)(1) and Louisiana Code of Civil Procedure articles 5091(A)(1)(c) and 802.[35] According to Hancock, when an attorney is appointed to represent the deceased, Louisiana Code of Civil Procedure Article 1235(B), which allows service on an attorney's secretary when that secretary is served in the attorney's office, is controlling as to how proper service is perfected.[36] Hancock notes that the official comments to the Code provision explain that "the purpose of the above article is to provide for service in all situations where legal representatives are cited in lieu of the defendant himself."[37] Hancock claims that because Dillon was appointed as the succession's attorney pursuant to a Louisiana state court order and Article 5091(A)(1)(c) of the Louisiana Code of Civil Procedure,

---

[31] Id.

[32] Id.

[33] Id.

[34] Id. at p. 3.

[35] Id.

[36] Id. at p. 4.

[37] Id. at p. 5 (citing La. Code Civ. P. art. 1235, cmt. a).

service on her secretary was proper.[38] As such, Hancock contends, Dillon chose to ignore the summons and complaint for over ten months after proper service without satisfactory explanation or presenting "good cause" to vacate the entry of default.[39]

Hancock avers that Dillon's actions further establish that the default was willful, as evidenced by the fact that she did not file an answer until after Hancock moved for default judgment.[40] Hancock agues that Dillon even admitted in her motion to set aside the entry of default that she was aware of the lawsuit, participated in discovery, made appearances, and attended status conferences.[41] According to Hancock, when a defendant's neglect is at least a partial cause of its failure to respond, the defendant has the burden to convince the court that its neglect was excusable, rather than willful, by a preponderance of the evidence.[42] Here, Hancock avers, Dillon has failed to do so because she has not provided any explanation for her egregious delay in moving to vacate the entry of default.[43]

Hancock admits that it will not suffer any prejudice if the entry of default is set aside.[44] However, Hancock argues, the Court may still deny Dillon's motion if the conduct is willful and if she fails to present a meritorious defense.[45] Here, Hancock avers, Dillon's conduct was willful and

---

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.* (citing *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 939 (5th Cir. 1999); *In re OCA, Inc.*, 551 F.3d 359, 372 (5th Cir. 2008)).

[43] *Id.* at pp. 5–6.

[44] *Id.* at p. 6.

[45] *Id.*

she has failed to allege any meritorious defense.[46] Furthermore, Hancock argues that although the Fifth Circuit has adopted a policy against the use of default judgments, the policy may be counterbalanced by considerations of social goals, justice, and expediency.[47] According to Hancock, in addition to the three "good cause" factors cited by Defendant, a court may also consider whether a defendant acted expeditiously to correct the default.[48] Here, Hancock argues, it is clear from the record that Defendant did not do so, and thus the factors weigh in favor of denying Dillon's motion to vacate the entry of default, as she has failed to present the requisite "good cause" required under Rule 55(c).[49]

**C.      *Hancock's Arguments in Support of Motion to Strike Answer***

In its motion to strike Dillon's answer, Hancock argues that despite being served with summons on March 26, 2015, and despite the Clerk entering a default against her on April 30, 2015, on January 13, 2016, Dillon filed an untimely answer without first seeking leave of Court.[50] Hancock contends that, pursuant to Federal Rule of Civil Procedure 55(c), Dillon's answer must be stricken because she failed to show good cause to set aside the Clerk's entry of default.[51] According to Hancock, the Clerk's entry of default remains in the record, and the entry of default against a defendant cuts off her right to appear in the case with respect to liability issues.[52] In fact, Hancock

---

[46] *Id.*

[47] *Id.* at p. 2 (citing *Rogers*, 167 F.3d at 936).

[48] *Id.* (citing *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)).

[49] *Id.* at p. 6.

[50] Rec. Doc. 33-1 at p. 2.

[51] *Id.* at p. 3.

[52] *Id.* (citing *Greyhound Exhibit Grp., Inc. v. E.L.U.L. Rlty. Corp.*, 973 F.2d 155, 160 (2d Cir. 1992)).

7

contends, once a default is entered, the defendant's only recourse is to file a motion to set aside the entry of default.[53] Thus, Hancock argues, because the clerk's entry of default was not set aside, Dillon's answer must be stricken.[54]

**D.     *Dillon's Arguments in Opposition to Motion to Strike Answer***

In opposition, Dillon repeats her arguments that she was not properly served and claims that therefore the Clerk's entry of default was not proper.[55] Furthermore, Dillon argues, her untimely answer was not previously filed due to inadvertent oversight, given that the parties had been attempting to resolve the case and proceeding with the litigation as evidenced by attendance at a recent status conference and other actions taken in the matter.[56]

### **III. Law and Analysis**

**A.     *Legal Standard for Setting Aside an Entry of Default***

Rule 55(c) of the Federal Rules of Civil Procedure provides that the Court may set aside an entry of default if the party seeking relief shows good cause.[57] "The decision to set aside a default decree lies within the sound discretion of the district court."[58] However, "because modern federal procedure favors trials on the merits," should a district court not set aside default, "an abuse of discretion need not be glaring to justify reversal."[59] Defaults are extreme sanctions reserved for rare

---

[53] *Id.* (citing Fed. R. Civ. P. 55(c); *N.Y. Life Ins. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996) ("Only if a Rule 55(c) motion is made, and granted, will [defendant] be allowed to file an answer . . . .")).

[54] *Id.*

[55] Rec. Doc. 38 at p. 2.

[56] *Id.* at pp. 2–3.

[57] Fed. R. Civ. P. 55(c).

[58] *United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985).

[59] *Id.*

8

occasions, and doubts as to whether or not a defendant has shown good cause should be resolved in favor of setting aside the default.[60] While a motion to set aside an entry of default is similar to a motion to set aside a default judgment under Rule 60(b), the Fifth Circuit has stated that a motion to set aside the entry of default "is more readily granted than a motion to set aside a default judgment."[61] The standard used when setting aside an entry of default is "good cause."[62]

Under Rule 55(c), good cause "is not susceptible of precise definition, and no fixed, rigid standard can anticipate all of the situations that may occasion the failure of a party to answer a complaint timely."[63] When utilizing the "good cause" standard, courts typically consider (1) whether default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented, among other possible factors.[64] In the Fifth Circuit, the "good cause" test is disjunctive.[65] "All of these factors should be viewed against the background principles that cases should, if possible, be resolved on the merits and that defaults are generally disfavored."[66] Additionally, "where there are no intervening equities any doubt should, as a general proposition,

---

[60] *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[61] *In re OCA*, 551 F.3d 359, 370 (5th Cir. 2008).

[62] *See id.*

[63] *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992).

[64] *Id.* Courts may also consider, for example, whether the public interest was implicated, whether there was a significant financial loss to the defendant, whether the defendant acted expeditiously to correct the default, or any other factor that can help identify circumstances in which there is "good cause" to set aside a default. *Id.* at 184.

[65] *Id.* at 184.

[66] *Lambert v. Bd. of Comm'rs of the Orleans Levee Dist.*, No. 05–5931, 2006 WL 1581262, at *2 (E.D. La. June 7, 2006) (Vance, J.) (citing *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) ( "[F]ederal courts should not be agnostic with respect to the entry of default judgments, which are generally disfavored in the law and thus should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement.") (internal quotations omitted)).

be resolved in favor of the movant to the end of securing a trial upon the merits."[67] As such, "the requirement of good cause has generally been interpreted liberally."[68]

**B.   *Analysis***

### 1.   Motion to Set Aside Entry of Default

As noted above, when assessing a motion to set aside an entry of default, a court must consider at least three factors: (i) whether default was willful; (ii) whether setting it aside would prejudice the adversary; and (iii) whether a meritorious defense is presented.[69] Hancock admits that it will suffer no prejudice if the entry of default is set aside,[70] and both parties make only brief mention of the third factor. Therefore, the Court's analysis hinges primarily on the first factor.

Whether a defendant's failure to timely answer was willful is a finding of fact left for the district court to determine.[71] Should the district court find that the default was willful, the court need not address any other factors, and the Court of Appeals will uphold the district court so long as its finding was not clear error.[72] However, a district court may find that even in situations where the defendant willfully failed to answer or file responsive pleadings, the balance of the factors favors setting aside the entry of default.[73]

---

[67] *Lacy*, 227 F.3d at 292.

[68] *Efffohn Int'l Cruise Holdings, Inc. v. Enchanted Isle MV*, 346 F.3d 552, 563 (5th Cir. 2003) (quoting *Amberg v. Fed. Deposit Ins. Corp.*, 934 F.2d 681, 685 (5th Cir. 1991)).

[69] *Dierschke*, 975 F.2d at 183.

[70] Rec. Doc. 37 at p. 6.

[71] *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992).

[72] *In re OCA*, 551 F.3d 359, 376 (5th Cir. 2008).

[73] *See Oddo v. Homecoming Fin. LLC*, No. 06–6888, 2007 WL 1192159 (E.D. La. Apr. 20, 2007) (Zainey, J.) ("Defendant'' 'excuses' for failing to respond to Plaintiffs' lawsuit demonstrate either that they wilfully ignored the complaint or were just grossly incompetent in their handling of the complaint. Nevertheless, a judgment has not

Dillon argues that her failure to answer was not willful because she was not properly served and because, given her active participation in attempts to resolve the pending litigation, her failure to answer was inadvertent. Service of process must be effective under the Federal Rules of Civil Procedure before a default judgment may be entered against a defendant.[74] Rule 4(e)(1) of the Federal Rules of Civil Procedure allows service of process to be made upon individuals within any judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."

Louisiana Code of Civil Procedure article 1235(B) provides that "[s]ervice on an attorney, as a representative of a client, is proper when the attorney's secretary is served in the attorney's office." Although Dillon contends that 1235(B) is inapplicable here because Dillon was appointed as an administratrix and therefore must be served in her personal capacity, the official comments to Article 1235(B) explicitly state that:

> The purpose of the above article is to provide for service in all situations where legal representatives are cited in lieu of the defendant himself. It is intended to cover ad hoc as well as permanently appointed curators and tutors; receivers, liquidators, trustees, *administrators, executors*, and other persons appointed by law as representatives; and agents for service of process designated by mandate.[75]

Therefore, despite Dillon's protests to the contrary, the rule in question explicitly anticipates situations in which attorneys are appointed as administrators of an estate. Here, Dillon does not

---

yet been entered against Tenet and Direct Mortgage and they have moved expeditiously to set aside the entries of default. The docket sheet reveals that little has taken place so far in this litigation except with regard to the instant defaults. Given the Fifth Circuit's policy in favor of resolving cases on their merits, the Court in its discretion will vacate the entries of default.").

[74] *See Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 934, 941–42 (5th Cir. 1999).

[75] La. Code Civ. P. art. 1235(B), cmt. a (emphasis added).

dispute that she was appointed administratrix of Oller's estate pursuant to Louisiana Code of Civil

Procedure article 5091(A)(1)(c), which provides, in pertinent part, that:

> A.  the court shall appoint an attorney at law to represent the defendant on the petition or ex parte motion of the plaintiff, when:
>
> (1)  it has jurisdiction over the person or property of the defendant, or over the status involved, and the defendant is:
>
> . . .
>
> (c) [d]eceased and no succession representative has been appointed.

Dillon cites no authority in support of her argument that she was improperly served, and the

Court finds that state law clearly allows for service on an attorney's secretary in situations such as

this. Therefore, it appears that, contrary to her protests, Dillon was properly served and the entry of

default against her was therefore valid.

Dillon argues in the alternative that her failure to answer was inadvertent, citing numerous

attempts to resolve the proceedings and her appearances before the Court, including at a scheduling

conference and a recent status conference held by the Court to discuss the parties' request to extend

all deadlines and continue the trial date in this matter. Hancock argues that Dillon's engagement in

this matter highlights that she was aware that there was an entry of default against her and therefore

her willfulness in failing to appear in a timely manner.

Although Dillon's failure to answer was clearly negligent, the Court is not convinced that

it was willful. Hancock does not contest that Dillon has repeatedly appeared before the Court and

otherwise engaged in litigating this matter. In fact, in its motion for extension of deadlines, Hancock

informed the Court that it had conferred with Dillon, who consented to the motion.[76] Hancock does

not provide any explanation for its assertion that Dillon has willfully, rather than negligently,

---

[76] Rec. Doc. 26 at p. 1.

12

avoided answering the complaint even while she has otherwise cooperated in the instant proceedings and has, according to Hancock's own prior motion, "amicably work[ed] towards a resolution of the succession and the instant matter."[77]

Furthermore, Hancock admits that it will not be prejudiced if the entry of default is set aside. Therefore, the Court can surmise that the only benefit in continuing to hold Dillon in default is so that the Court may rule in Hancock's favor on its pending motion for default judgment. As Hancock has itself acknowledged, the Fifth Circuit has held that default judgments are extreme sanctions reserved for rare occasions, and doubts as to whether or not a defendant has shown good cause should be resolved in favor of setting aside the default.[78] Moreover, a motion to set aside the entry of default "is more readily granted than a motion to set aside a default judgment."[79] Doubts are to be resolved in favor of a trial on the merits.[80] Therefore, although it is clear that Dillon was properly served and nevertheless waited 10 months to move to set aside the entry of default, the Court is not inclined to maintain an entry of default against Dillon on the grounds that she willfully failed to answer because it is clear from the record that Dillon has actively participated in the case and seemingly intends to continue litigating the matter.

Next, under a Rule 55(c) analysis, likelihood of success is not the measure of whether a meritorious defense is presented.[81] Rather, "Defendants' allegations are meritorious if they contain 'even a hint of a suggestion' which, proven at trial, would constitute a complete defense. In fact,

---

[77] *Id.* at p. 2.

[78] *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[79] *In re OCA*, 551 F.3d 359, 370 (5th Cir. 2008).

[80] *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000).

[81] *Sea Horse Marine Inc. v. Black Elk Energy Offshore Operations, L.L.C.*, No. 15-1082, 2015 WL 4079831, at *4 (E.D. La. July 6, 2015) (Brown, J.).

even 'broad and conclusory' allegations meet the meritorious defense criterion for setting aside an entry of default."[82] "In determining whether a meritorious defense exists, the underlying concern is whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default."[83]

Dillon alludes only briefly to her intent to present a meritorious defense "as to the amount of the balance due based upon the proper applications of credits to the debt and calculation of interest, costs, and attorney fees."[84] However, given the very light burden faced by Dillon, the Court finds that she has presented evidence of a meritorious defense, and that therefore all three factors weigh in favor of setting aside the entry of default in this matter.

### 2. Motion to Strike Answer

As Hancock rightfully noted, once a default is entered, the defendant's only recourse is to file a motion to set aside the entry of default.[85] Therefore, Dillon's answer, filed before the instant Order that will vacate the entry of default against her, technically ought to be struck as untimely filed without leave of the Court. However, in setting aside the entry of default, the Court would be inclined to grant any motion by Dillon seeking leave to file an answer. Therefore, in the interest of judicial economy, and to avoid redundant proceedings that would end in the same result, the Court declines to grant Hancock's motion, and will grant leave to file to Dillon, such that her answer may be considered properly before the Court at this time.

---

[82] *Howard v. United States*, No. 93-1520, 1993 WL 353506, at *3 (E.D. La. Sept. 8, 1993) (Clement, J.) (citing *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C. Cir. 1980)).

[83] *In re OCA*, 551 F.3d 359, 373 (5th Cir. 2008) (internal citations omitted).

[84] Rec. Doc. 38 at p. 3.

[85] *See N.Y. Life Ins. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996) ("Only if a Rule 55(c) motion is made, and granted, will [defendant] be allowed to file an answer . . . .").

## IV. Conclusion

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Dillon's motion to set aside the entry of default[86] is **GRANTED.**

**IT IS FURTHER ORDERED** that Hancock's motion to strike Dillon's answer[87] is **DENIED.**

**IT IS FURTHER ORDERED** that Hancock's motion for default judgment[88] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Dillon is granted leave to answer.

**NEW ORLEANS, LOUISIANA**, this <u>25th</u> day of January, 2016.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[86] Rec. Doc. 34.

[87] Rec. Doc. 33.

[88] Rec. Doc. 29.

15